**Jill M. DELLERT, Plaintiff,**

v.

**TOTAL VISION, INC., d/b/a Optica, and Tony Mackin, individually, Defendants.**

**No. 94 C 456.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 8, 1995.

Mary Jude Adams, Sloan and Adams, Chicago, IL, for plaintiff.

Marc Craig Smith, Peter F. Herzog, Rosenblum, Vandenberg & Smith, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Defendants, Total Vision, Inc., d/b/a Optica ("TVI") and Tony Mackin ("Mr. Mackin"), have filed a motion pursuant to Federal Rule of Civil Procedure 56 requesting that this Court enter summary judgment in their favor and against plaintiff, Jill M. Dellert ("Ms. Dellert") on certain claims in Ms. Dellert's complaint. For the reasons stated below, defendants' summary judgment motion is granted.

### Undisputed Facts [1]

On January 29, 1994, Ms. Dellert filed a lawsuit against TVI and Mr. Mackin in which

---

**1.** The facts in defendants' local rule 12(m) statement which plaintiff did not controvert in her local rule 12(n) statement are deemed admitted for purposes of this motion. DIST.CT R. 12(n); *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir.1992). The additional facts which plaintiff provides in her local rule 12(n) statement and

she alleges sexual harassment, retaliation and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act. 42 U.S.C. § 2000(e), *et seq.;* 775 ILCS 5/8–101, *et seq.* Ms. Dellert is an Illinois citizen. TVI is an Illinois corporation. TVI operates one upscale retail eye glass outlet in Chicago, Illinois and two in Texas. Until 1992, TVI managed a store in New York which was owned by an unrelated third party. Mr. Mackin was president of TVI at all times relevant to this action.

On July 21, 1992, Ms. Dellert submitted an application for employment at TVI's Chicago store. At the time she applied for the job with TVI, Ms. Dellert was working as a model. Her modeling assignments consisted primarily of sportswear, casualwear and some business attire. Ms. Dellert modeled lingerie on one occasion for Sears. Although she never modeled swimsuits for a client, she had some photographs of herself in a conservative swimsuit in her portfolio.

On July 27, 1992, TVI offered Ms. Dellert a job as an optician at a salary of $8.00 per hour and a two percent commission on sales she made. Mr. Sharpe told Ms. Dellert that there would be an opportunity for a raise after a 90–day probationary period. Ms. Dellert accepted the job offer.

Mr. Mackin lives in California, but travels to the Chicago TVI store from time to time. During Ms. Dellert's tenure at TVI, Mr. Mackin visited the Chicago store four to five times. Each visit normally lasted two to three days. Mr. Mackin also makes regular telephone calls to the TVI store in Chicago to check up on business and "chitchat." Shortly after Ms. Dellert began work, Mr. Mackin made such a call. Mr. Mackin told Ms. Dellert that he understood that she had worked for Service Optical, that she was a model and that she was engaged. Although Ms. Dellert did not find Mr. Mackin's comments about her modeling and engagement offensive, she did think that the comments were unnecessary.

defendants did not controvert are also admitted. DIST.CT.R. 12(m).

On or about August 9, 1992, during one of Mr. Mackin's visits to Chicago, Ms. Dellert and Dennis Hardenstein ("Mr. Hardenstein"), Ms. Dellert's co-employee, were in the store. TVI had recently received a shipment of sun glasses. Mr. Mackin asked Ms. Dellert to try on a pair of the glasses, and when she did, commented that they would look much better without a skirt.[2]

On that day or the next day, Mr. Mackin brought in a photograph of a model that he was debating using for advertisement purposes. The model was lying on her stomach, her back was completely naked and most of her buttocks were showing. Glass frames were balanced on her back. Mr. Mackin showed the photo to everyone in the store at the time, including Ms. Dellert, Mr. Sharpe and Mr. Hardenstein. Mr. Mackin said to Mr. Sharpe: "This is why I can't have Jill model for us. If she were in this position, I would have to jump her."

During the same day, Ms. Dellert and Mr. Mackin discussed developing film for TVI, including the types of processes that could be used. Ms. Dellert told Mr. Mackin that she had examples of black and white photos, color photos and laser prints in her modeling portfolio and offered to show Mr. Mackin the portfolio. Mr. Mackin asked Ms. Dellert if the portfolio contained pictures of her in sexy lingerie or swimwear, and, said if not, he did not want to see it.

After these occurrences, Ms. Dellert felt uncomfortable. In August, 1992, she complained to Mr. Sharpe about Mr. Mackin's comments. Mr. Sharpe told Ms. Dellert that Mr. Mackin was a little rough around the edges and that she should not let him affect her. Ms. Dellert continued to feel uncomfortable into September, 1992.

In addition to the above three statements, in five to ten different phone conversations in September and October 1992, Mr. Mackin asked Ms. Dellert if she was still engaged. Mr. Mackin made at least three or four statements about the female anatomy when he was in the TVI office, but the evidence

2. Defendants accept Mr. Mackin's statements as true for the purpose of their summary judgment motion.

does not indicate Ms. Dellert heard him make these comments. He made one such statement in front of a female eyeglass representative. Mr. Mackin also made rude comments about pretty women who were customers or passersby such as "God, those are big" or "God, those are great legs," but again there is no evidence in the record that Ms. Dellert heard him make these statements.

In November, 1992, Ms. Dellert and Mr. Mackin discussed Ms. Dellert's raise. Mr. Mackin offered to increase Ms. Dellert's percentage on commission rather than her salary. At one point, Mr. Mackin said that he would discuss the raise with his partners and get back to Ms. Dellert in a few days. Ms. Dellert was going to be off work during that time so Mr. Mackin asked for her home telephone number. When Ms. Dellert told Mr. Mackin that she lived with two female roommates, he said that he would be right over. (Mr. Mackin was in California at the time. Dellert Aff. ¶¶ 14, 15.)

Ms. Dellert again complained to Mr. Sharpe about Mr. Mackin's comments. Mr. Sharpe talked to Tim Petry, a TVI shareholder, who spoke with Denis Mola, another TVI shareholder, who, in turn, told Mr. Mackin that Ms. Dellert had complained. Mr. Mackin called Ms. Dellert in November, 1992. After this telephone conversation, Mr. Mackin did not make any further comments to Ms. Dellert which she believed were harassing.

During this same time period, Mr. Mackin asked Mr. Sharpe to have Ms. Dellert sign a letter of waiver of any claims against Mr. Mackin. Mr. Sharpe told Mr. Mackin he did not think that Ms. Dellert would sign such a letter. Following these events, Ms. Dellert was given a raise from $8.00 per hour to $9.50 per hour, effective December 1, 1992.

Other TVI employees made various observations. Mr. Sharpe described Ms. Dellert as crying and nearly breaking down emotionally over Mr. Mackin's treatment of her. Mr. Hardenstein noticed Ms. Dellert's withdrawal immediately after some of Mr. Mackin's statements and felt that Ms. Dellert was hurt quite a bit by the statements.

Ms. Dellert never indicated that she was receptive to Mr. Mackin's comments. When Ms. Dellert resigned in February, 1993, she told Mr. Sharpe that she could not work in a situation where she did not know where or when the sexual comments would recur. Augie DeLarosa ("Mr. DeLarosa"), a male, replaced Ms. Dellert. Mr. DeLarosa and Ms. Dellert had equivalent experience, but Mr. DeLarosa did not have a college degree.

### Standard of Review

██ Summary judgment disposes of a claim before trial in instances where a trial is unnecessary and can only result in delay and expense. *Ford Motor Credit Co. v. Devalk Lincoln–Mercury, Inc.*, 600 F.Supp. 1547, 1549 (N.D.Ill.1985). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). A genuine issue of fact exists when a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable inferences must be drawn in favor of the non-moving party; however, the mere possibility that a factual issue might exist is not an adequate basis for denying a summary judgment motion. *Powers v. Dole*, 607 F.Supp. 841, 844 (N.D.Ill.1984).

### Sexual Harassment

██ Title VII provides a remedy for conduct having "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Dey v. Colt Construction & Development Company*, 28 F.3d 1446, 1453 (7th Cir. 1994).

> When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.

*Id.* (quoting *Harris v. Forklift Systems, Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)). Courts must determine whether an environment is "hostile" or "abu-

sive" by looking at all the circumstances. *Harris v. Forklift Systems, Inc., supra*, —— U.S. at ——, 114 S.Ct. at 371. Relevant factors include the frequency of the discriminatory conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating or is merely an offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. *Id.* No single factor is required. *Id.*

■ This Court is required to evaluate the relevant factors from both an objective and subjective viewpoint:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.; Dey v. Colt Construction & Development Co., supra*, 28 F.3d at 1454. Therefore, I will consider the actual effect of Mr. Mackin's conduct on Ms. Dellert as well as the effect similar conduct would have had on a reasonable person in Ms. Dellert's position. *See Dey v. Colt Construction & Development Co., supra*, 28 F.3d at 1454.

### Subjective Viewpoint

■ Ms. Dellert need not show that a campaign of harassment interfered with her work performance in order to establish a violation of Title VII. *Id.* at 1455; *Saxton v. American Telephone and Telegraph Company*, 10 F.3d 526, 534–35 n. 14 (7th Cir.1993). The inquiry under Title VII "is not whether work has been impaired, but whether working conditions have been discriminatorily altered." *Id.* at 1455 (quoting *Harris v. Forklift Systems, Inc., supra*, —— U.S. at ——, 114 S.Ct. at 372 (Scalia, J. concurring)). The Seventh Circuit has approvingly quoted the Federal Circuit's observation that

> [the fact that] women who are the objects of discriminatory behavior because of their sex are able to maintain satisfactory job

performance is not grounds for denigrating their concerns. *The criterion is not what a reasonable woman employee is capable of enduring, but whether the offensive acts alter the conditions of employment.*

*Dey v. Colt Construction & Development Co., supra*, 28 F.3d at 1455 (quoting *King v. Hillen*, 21 F.3d 1572, 1583 (Fed.Cir.1994) (emphasis added by *Dey* Court). Evidence that a campaign of harassment had a negative impact on its target and made it more difficult for her to do her job fulfills this test. *Id.*

Although Ms. Dellert states in her brief that she was able to carry out her job responsibilities, she also states in her deposition and affidavit that Mr. Mackin's conduct made her feel uncomfortable, humiliated and intimidated. She says Mr. Mackin's remark that a pair of glasses which he requested she try on "would look much better without a skirt" upset her and caused her to question herself, since she was shocked that he would make such a comment to her. When Ms. Dellert offered to show her portfolio to Mr. Mackin to give him an idea of available film processing techniques which he could use for the store, Mr. Mackin said, within earshot of Ms. Dellert's manager and co-worker, "Do you have any pictures of you in sexy lingerie or bikinis? If not, I don't want to see it." Ms. Dellert says she felt humiliated and belittled.

According to Ms. Dellert, after Mr. Mackin left town, she, in tears, complained to her manager, Mr. Sharpe, that she was upset with Mr. Mackin's behavior and did not think that she could continue to work at TVI under those conditions. She was frightened and insecure about her professional future. A few months later, after Mr. Mackin commented that "[he'd] be right over" in response to Ms. Dellert's informing him that she lived with two female roommates, Ms. Dellert again complained to Mr. Sharpe. She asked Mr. Sharpe to tell Mr. Mackin that his behavior had to stop.

Ms. Dellert says Mr. Mackin's inquiries, in five to ten different phone conversations, about her engagement caused her further discomfort. She avoided answering the

phone for fear it would be Mr. Mackin. Mr. Sharpe would allow her to arrange her schedule so that she would not be in the store during Mr. Mackin's visits. Ms. Dellert's worry about Mr. Mackin's telephone calls and visits made her emotional at work, caused her stomach to churn, her pulse to race and caused her to feel queasy. The evidence which Ms. Dellert presents is sufficient to create a factual issue on the question of whether Ms. Dellert subjectively perceived her work environment to be hostile and abusive.

### *Objective Viewpoint*

■■■ Despite Ms. Dellert's evidence regarding the subjective impact of Mr. Mackin's statements, defendants argue that the incidents which Ms. Dellert alleges were too limited and harmless to be actionable. It is true that " 'relatively isolated' instances of non-severe misconduct will not support a hostile environment claim." *Saxton v. American Telephone & Telegraph Company, supra*, 10 F.3d at 533.

> [A]n offensive utterance alone would not give rise to a Title VII claim because it would not sufficiently affect the terms and conditions of the plaintiff's employment. Yet a series of such statements, if sufficiently severe and pervasive, could give rise to an objectively hostile work environment[.]

*Dey v. Colt Construction & Development Co., supra*, 28 F.3d at 1456 (citations omitted). On the other hand, both the Supreme Court in *Harris v. Forklift Systems, Inc., supra*, and the Seventh Circuit in *Doe v. R.R. Donnelley & Sons Company*, 42 F.3d 439, 445 (7th Cir.1994), have emphasized that there is " 'no 'magic number' of incidents that give rise to a cause of action.' " In TVI's and Mr. Mackin's view, Ms. Dellert's claim consists of four specific incidents of alleged harassment: those comments on August 9–10, 1992 and one comment in November, 1992. The defendants assert that those incidents were isolated, sporadic and not severe enough to create an objectively hostile and abusive work environment.

The four statements to which defendants refer are the following:

1) After Ms. Dellert tried on a pair of glass frames, Mr. Mackin commented that the frames would look much better without a skirt.

2) When showing TVI employees a photograph of a bare-backed model lying on her stomach with glass frames balanced on her back, Mr. Mackin stated: "This is why I can't have Jill model for us. If she were in this position, I would have to jump her."

3) In response to Ms. Dellert's offer to show Mr. Mackin her portfolio which contained examples of different film processing techniques, Mr. Mackin asked Ms. Dellert if the portfolio had pictures of her in sexy lingerie or swimwear, and, said if not, he did not want to see it.

4) After Ms. Dellert informed Mr. Mackin that she lived with two female roommates, Mr. Mackin said that he'd be right over.

Ms. Dellert says that Mr. Mackin's offensive behavior was not limited to these four statements. In five to ten different phone conversations during her employment, Mr. Mackin asked Ms. Dellert if she was still engaged. She says that Mr. Mackin's comments about the female anatomy should also be considered.

I cannot agree that the statements allegedly made by Mr. Mackin about women's anatomy in general or women passing by should be considered on this motion. As indicated above, Ms. Dellert did not submit evidence that these comments were made in her presence or that she even knew about them until after she left defendants' employment. Statements about which she was unaware cannot have created a hostile environment.

The most offensive comments made by Mr. Mackin occurred during a two day period the first time he met Ms. Dellert, in August, 1992. There is no doubt that the comments (that she would look better in the sunglasses without a skirt or that if Ms. Dellert were to pose in the manner of a woman in a semi-nude photograph he would have to jump her) are objectively offensive in the context of the workplace. They were, however, each made once, during a one- or two-day period early in Ms. Dellert's employment. They were never repeated.

Ms. Dellert also complains that Mr. Mackin, during the same two day period, stated that he did not want to see her model portfolio if it did not contain photographs of her in sexy clothing. While the public statement that he was not interested in her portfolio was undoubtedly embarrassing to her and was certainly rude, I am unable to conclude that the statement itself—considering that her job did not in any way involve modeling or photography—descended to the level of sexual harassment.

Ms. Dellert has two more complaints about Mr. Mackin's behavior. She argues that his question on five or ten occasions as to whether she was still engaged should be considered improper. Unless, however, there was some reason to believe that underlying the question was an unstated intent that if she were not, Mr. Mackin intended to pursue her in a sexual manner, there was nothing wrong with the question. Ms. Dellert has not claimed that she had any belief, or any reason to believe, that such was the intent. She does complain that an additional instance of sexual harassment occurred in November, 1992, when she telephoned Mr. Mackin about her raise and he said he would call her back at her home, since she was not scheduled to be at work. In that conversation, Mr. Mackin asked her with whom she lived and she said female roommates. At that, Mr. Mackin stated he would be right over. Defendants have not suggested any proper reason for Mr. Mackin to have asked her who she lived with but it is also clear that Mr. Mackin was not about to come right over and that Ms. Dellert knew that: She called Mr. Mackin in California, where he lived. As it turned out, that was the last instance in which Mr. Mackin ever said anything offensive to Ms. Dellert, because she complained after that remark and the remarks stopped. After that, Mr. Mackin did not even ask if she were engaged.

In summary, even if Mr. Mackin's statement that he would be right over in response to Ms. Dellert's statement that she lived with female roommates is considered improper,

there were three statements made over a period of months that could be considered objectively offensive.[3] Ms. Dellert says in an affidavit filed in opposition to defendants' motion for summary judgment that in response to Mr. Mackin's comments the first time he met Ms. Dellert, her supervisor allowed her to take time off when Mr. Mackin came to town to avoid any repetition of the two comments made early in her employment. When she complained again, about the comment that Mr. Mackin would be right over, she heard no more offensive comments. Under these circumstances, I conclude that as a matter of law Ms. Dellert was not subjected to conduct "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Systems, Inc., supra,* —— U.S. at ——, 114 S.Ct. at 371. Summary judgment will therefore be entered in favor of defendants on Counts one and three of Ms. Dellert's complaint.

Defendants did not seek summary judgment on Count two of Ms. Dellert's complaint, which charges retaliation under Title VII. In that count, Ms. Dellert alleges that she was given a smaller raise (from $8.00 to $9.50 an hour as opposed to $10.00 an hour) as a result of her complaint about Mr. Mackin's behavior. At the next status hearing a trial date will be set with respect to this count unless the parties report settlement of this dispute (since Ms. Dellert left defendants' employment to take another position on February 25, 1993, the period in question was slightly over three months from the date Ms. Dellert says she was to have received her raise).

---

**3.** If Mr. Mackin's statement, during the same two-day period in which the first two offensive comments were made, that he was not interested in seeing Ms. Dellert's modeling portfolio unless it included photographs of her in sexy clothing is included, there are four statements. My conclusion is the same.