**Lillian T. JONES, Plaintiff,**

v.

**WDAS FM/AM RADIO STATIONS, et al., Defendants.**

**No. Civ.A.97–5608.**

United States District Court,
E.D. Pennsylvania.

Nov. 9, 1999.

Diane L. Newman, Pomerantz, Lewis and Assocs., Philadelphia, PA, for Lillian T. Jones, plaintiff.

Elizabeth A. Malloy, Jill Garfinkle Weitz, Klett, Lieber, Rooney & Schorling, Philadelphia, PA, for WDAS FM/AM Radio Stations, Chancellor Media Corp., defendants.

Vincent J. Pentima, Philadelphia, PA, Elizabeth A. Malloy, Jill Garfinkle Weitz, Klett, Lieber, Rooney & Schorling, Philadelphia, PA, for Evergreen Media Corporation, third–party plaintiff.

Edward T. Ellis, C. Alexa Abowitz, Montgomery, MC Cracken, Walker & Rhoads, Philadelphia, PA, Leslie H. Wiesenfelder, Dow, Lohnes & Albertson, PLLC, Washington, DC, for Unity Broadcasting Network, Inc., third–party defendant.

Stephanie K. Tartakow, Colleen Bannon, Thomas C. De Lorenzo, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, Vincent J. Pentima, Klett Lieber Rooney & Schorling, Philadelphia, PA, for Beasley FM Acquisition Corporation, defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff, Lillian T. Jones, filed this action against Defendants WDAS FM/AM Radio Stations ("WDAS"), Evergreen Media Corporation ("Evergreen"), Beasley FM Acquisition Corporation ("Beasley"), and Chancellor Media Corporation ("Chancellor"), asserting claims of sex and age

discrimination, retaliatory harassment, and retaliation. Specifically, plaintiff asserts claims against all four defendants for age and sex discrimination, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA") stemming from events which allegedly occurred from January 1994 through the termination of her employment at WDAS in January 1995.

On April 16, 1999, this court granted Evergreen's and Chancellor's motions for summary judgment on successor liability grounds. In addition, by stipulation, the parties agreed to dismiss defendant WDAS. Before the court is the sole remaining defendant Beasley's motion for summary judgment. Beasley presents several arguments in support of its motion for summary judgment. First, Beasley contends that plaintiff's claims are barred under the PHRA and Title VII by the applicable statute of limitations. Second, Beasley argues that plaintiff has failed to establish a prima facie case of retaliation, retaliatory hostile work environment, and age or gender discrimination. Lastly, Beasley asserts that, even if plaintiff has established a prima facie case, plaintiff has failed to offer evidence to rebut Beasley's proffered legitimate, nondiscriminatory reason for eliminating plaintiff's position.

The motion for summary judgment will be granted. The court finds: 1) that plaintiff's claim of retaliation based on the unfavorable compensation package and the creation of a hostile work environment are barred by Title VII's statute of limitations; 2) plaintiff's claim of retaliation based on a negative employment reference fails because plaintiff cannot show that defendant took adverse employment action; and 3) plaintiff's claim of retaliation based on the elimination of her position and ultimate termination fails because plaintiff cannot rebut defendant's legitimate, nondiscriminatory reason for eliminating her position. Finally, plaintiff's claim for discrimination based on age and gender also fail because plaintiff has not proffered evidence from which a factfinder could conclude that defendant's legitimate, nondiscriminatory reason is pretextual.

## I. FACTS

The following facts are undisputed or if disputed, are construed in the light most favorable to the non-moving party. On April 28, 1990, plaintiff commenced employment at WDAS in the position of Local Sales Manager ("LSM").[1] Plaintiff had been recruited by a former colleague, Kernie L. Anderson ("Anderson"), who was now the General Manager at WDAS. At all times during her employment at WDAS, plaintiff reported directly to Anderson. Plaintiff's job duties at WDAS included supervising and managing the local sales staff; generating revenue; dealing with local retail agencies; hiring, training and motivating the sales staff; overseeing and monitoring inventory; and, projecting and broadcasting budgets. The LSM did not sell air time directly, but received a salary and bonus based upon a projected quota and performance of the local sales staff.

On January 6, 1994, at a weekly meeting of the WDAS sales staff, two female account executives, Gwendolyn Wilson ("Wilson") and Colleen "Jo" Steele ("Steele"), complained to plaintiff that E. Steven Collins ("Collins"), WDAS' National Sales Manager ("NSM"),[2] had sexually harassed them. Four days later, on January 10, 1994, plaintiff advised Anderson that Col-

---

1. At the time plaintiff was hired at WDAS, the station was owned by Unity Broadcasting Network, Inc. ("Unity"). Beasley purchased WDAS from Unity in May of 1994 and plaintiff remained employed at WDAS until January 6, 1995.

2. Collins had recently been promoted to the NSM position by Anderson. As NSM, Collins also reported directly to Anderson.

lins had sexually harassed these female employees.

Plaintiff contends that in retaliation for reporting the allegations of sexual harassment, on January 11, 1994, Anderson provided plaintiff with an unfavorable compensation package for the upcoming year.[3] Plaintiff found the 1994 compensation plan to be unrealistic in comparison to her 1993 compensation plan, resulting in a strong likelihood of a decrease in her total compensation for 1994.

On January 19, 1994, plaintiff sent a memorandum to Anderson, advising him that she believed he provided her with an unfavorable 1994 compensation package in retaliation for her reporting the sexual harassment. In addition, plaintiff submitted a counter-proposal for a 1994 compensation package.

Anderson responded to plaintiff's memorandum by handwriting the word "rejected" on the first page of her memorandum and initialing it. Although Anderson never further discussed plaintiff's counter-proposal with her, on January 19, 1994, Anderson sent plaintiff a memorandum advising her that the claims of retaliation were "bogus" and she was "off to a rocky start for 1994". Following this encounter and continuing throughout the remainder of her employment, plaintiff alleges that Anderson treated plaintiff in an extremely hostile, rude and harassing manner by screaming at plaintiff, slamming doors in her face, subjecting her to unjustifiably harsh and unwarranted criticism and deliberately and irreparably undermining her relationships with her subordinates. Plaintiff further alleges that after she reported the sexual harassment allegations

to Anderson, his overall treatment of her became hostile in terms of her entire work environment.

In May of 1994, Beasley purchased WDAS from Unity. Following this purchase, plaintiff, Anderson and Collins remained employed at WDAS in their same capacities. In addition, according to plaintiff, after the sale, Anderson began reporting to Simon T, the president of Beasley. At two separate meeting, plaintiff allegedly complained to Simon T about Anderson's harassing and discriminatory treatment of her and the failure to properly investigate and remedy the situation.[4] Following these meetings, plaintiff asserts that Beasley failed to take action against Anderson or remedy the alleged harassment and discrimination.

On July 15, 1994, Anderson sent plaintiff a written warning for extending the probationary period of an account executive. Plaintiff had extended the probationary period of an employee under her supervision. She had done so on the belief that the employee was defiant and insubordinate. Anderson disagreed and did not support plaintiff's decision to extend the employee's probationary period. Plaintiff believed that Anderson did not support her decision and issued the warning to further undermine plaintiff's authority with her staff. This letter was the only reprimand issued to plaintiff during her employment at WDAS.

On January 6, 1995, plaintiff was terminated from her employment at WDAS. Plaintiff alleges Anderson advised her that the LSM position was being eliminated and she was not in Beasley's future plans.

---

**3.** In fact, the January 11, 1994 memorandum made no reference to plaintiff's report of the sexual harassment. Anderson eventually did address the allegations in a January 13, 1994 memorandum sent to the entire WDAS staff. In the memorandum, Anderson stated he would personally deal with the issue, as well as with the persons involved and would not tolerate any sexual harassment in the workplace. In addition, Anderson held a meeting with Collins and Wilson to further discuss the incident. After Wilson complained that she was disappointed with Anderson for failing to take any action against Collins, Anderson issued a written reprimand to Collins.

**4.** Plaintiff meet with Mr. T once in February of 1994, before Beasley purchased Unity and again later in May of 1994 after Beasley had purchased WDAS.

Further, plaintiff was told that her LSM position was being eliminated as part of Beasley's new business plan to create a General Sales Manager ("GSM") position to oversee both local and national sales, instead of having a local and a national sales manager. Beasley offered plaintiff the opportunity to interview for the new GSM position or to take a demotion as a non-management account executive. Plaintiff declined to interview for the new position because, according to her, she should have been offered the new position without the requirement of an interview.[5] In addition, plaintiff did not consider the offer of a position as an account executive to be a true offer of employment because she believed there were no openings at the time for an account executive. After taking some time off, plaintiff requested a severance package from Beasley. Beasley denied the request and plaintiff never returned to work.

On May 17, 1995, plaintiff filed a charge against Beasley with the Equal Employment Opportunity Commission ("EEOC"), which charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). On June 11, 1997, the EEOC issued to plaintiff a Notice of Right to Sue. On September 5, 1997, plaintiff commenced the instant action against Beasley.[6]

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

### A. *Plaintiff's Retaliation Claims.*

Plaintiff alleges that Anderson retaliated against her following her report of the allegations of sexual harassment against Collins by: 1) giving her an unfavorable compensation package; 2) subjecting her to retaliatory harassment by creating a hostile working environment;[7] 3) giving

5. Anderson appointed Chris Squire ("Squire"), a younger male, as interim GSM and after interviewing six individuals choose Squire for the permanent position.

6. Plaintiff did not file a claim against Unity in her EEOC charge, nor has she at any time asserted a claim against Unity, as her former employer.

7. The Third Circuit has concluded that "[t]o bring an actionable claim for ... harassment because of an intimidating and offensive work environment, a plaintiff must establish 'by a totality of the circumstances, the existence of a hostile or abusive working environment....'" *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 753 (3d Cir.1995) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990) (citations omitted)). The plaintiff must set forth the following five elements: 1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; 2) the discrimination

her a negative job reference after her separation from employment at WDAS; and 4) discharging her.

■ Title VII provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified or assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3. Under Title VII, a plaintiff who relies upon indirect or circumstantial evidence enjoys the benefit of the *Burdine–McDonnell Douglas* burden shifting mode of analysis. First, the plaintiff must establish a prima facie case. To establish a prima facie case of discriminatory retaliation under Title VII, a plaintiff must demonstrate that: 1) she engaged in activity protected by Title VII; 2) the employer took an adverse employment action against her; and 3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Robinson v. Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir.1997) (*citing Nel-*

son v. Upsala College, 51 F.3d 383, 386 (3d Cir.1995)). Once the plaintiff establishes a prima facie case, the defendant must state a legitimate, nondiscriminatory reason for the adverse employment action. *See Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996). If the defendant does so, the plaintiff must then meet his burden of persuasion by proving that the defendant's proffered reasons are not the "true reasons" for its decision, but instead are merely a pretext for discrimination. *Id.*

1. *Plaintiff's first two claims of retaliation are barred by Title VII's Statute of Limitations.*

a) *EEOC filing requirements.*

■ As a preliminary matter, Beasley asserts that all of plaintiff's retaliation claims are timed bar by the statutory period provided by Title VII because they arose from discriminatory acts which allegedly occurred more than 300 days before the filing of the charge of discrimination. The court agrees in part and concludes that two of plaintiff's retaliation claims— receiving an unfavorable employment package and being subjected to a hostile working environment—are time barred.[8]

---

was pervasive and regular; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and 5) the existence of respondeat superior liability.

*West,* 45 F.3d at 753.

8. Beasley also argues that since both the ADEA and Title VII prohibit discrimination by an employer, *see* 42 U.S.C. § 2000e–2 (West 1999); 29 U.S.C. § 623 (West 1999), and Beasley did not become plaintiff's employer until May of 1994 when Beasley acquired WDAS from Unity, plaintiff is barred from alleging claims which arose prior to Beasley's purchase of WDAS or from supporting her claims with factual allegations which occurred prior to Beasley's purchase of the station. In addition, Beasley appears to argue that since plaintiff never filed a charge of discrimination against Unity, Beasley cannot be held liable as a successor corporation for

Unity's actions. Thus, according to Beasley, all of plaintiff's retaliation claims are barred because the claims refer to or rely upon factual allegations which predate Beasley's purchase of WDAS. In contrast, plaintiff argues that, although Unity was "technically the owner of WDAS" when Anderson began his campaign of retaliation against plaintiff after she reported the sexual harassment, Beasley should be liable because Anderson continued the retaliation under Beasley and plaintiff put Beasley on notice of Anderson's harassment before Beasley purchased WDAS.

Neither party cites any authority for their respective positions and the court has found nothing squarely on point. In any event, the parties' arguments seem to conflate two distinct theories—successor corporation liability and the continuing violation theory of liability. Because summary judgment is warranted on other grounds, the court needs not address this novel issue.

■ "[T]he ordinary time for filing a charge employment discrimination with the EEOC is 300 days after the alleged discrimination when the charge is filed ... with the appropriate state agency." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 480 (3d Cir.1997) (*citing* 42 U.S.C. § 2000e–5(e)(1)). This time requirement is not jurisdictional, but instead, like any statute of limitations is subject to waiver, estoppel, and equitable tolling. *See Pittman v. Continental Airlines, Inc.*, 35 F.Supp.2d. 434, 441 (E.D.Pa.1999). Plaintiff filed a complaint with the EEOC, which was cross filed with the PHRA, on May 17, 1995. Therefore, any claim which occurred prior July 20, 1994 would ordinarily be barred.[9]

Plaintiff's retaliation claim based upon her claim that she received an unfavorable compensation package is clearly barred because it is undisputed that plaintiff received the unfavorable proposal from Anderson on January 19, 1994 and she did not file a complaint with the EEOC within 300 days of this adverse employment action. Similarly, plaintiff's retaliatory harassment claim also is barred because she did not file a claim with the EEOC within 300 days from the time Anderson began the alleged harassment. To this effect, plaintiff testified that Anderson's hostile treatment began immediately following her report of sexual harassment in January of 1994 and continued throughout her employment. In addition, plaintiff solicited testimony from witnesses who testified that Anderson was hostile and rude to plaintiff beginning as early as January of 1994. *See* Pl.'s Mot. for Summ.J. at 14–15.

On the other hand, plaintiff's retaliatory termination is not time barred.[10] It is undisputed that plaintiff left WDAS in January of 1995 and filed her charge of discrimination in May of 1995, well within the 300 day filing period. Similarly, plaintiff's retaliatory negative employment reference claim is not time barred because plaintiff allegedly received the negative employment references in September of 1996, which was also well within the 300 day limitations period.[11]

b) *Continuing violations doctrine.*

■■ Although plaintiff has not directly raised this issue in her response to defendant's motion, the continuing violation doctrine, an equitable exception to the EEOC timely filing requirement, if applicable, would allow plaintiff to proceed with her retaliatory harassment claim against Beasley. *West*, 45 F.3d at 754. The continuing violation doctrine "is premised on the equitable notion that the statue of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Hicks*

9. In order to bring a civil action under the PHRA, a plaintiff must first file an administrative charge of discrimination with the PHRC within 180 days of the alleged act of discrimination. *See* 43 Pa.Stat.Ann. § 959(h) (West Supp.1996). Since the court concludes that two of plaintiff's retaliation claims are barred by the 300–day statute of limitations, any similar claims brought pursuant to the PHRA are also barred by the PHRA's shorter limitations period.

10. In addition, this claim would not be barred by the PHRA's filing requirement, as plaintiff filed her charge with the PHRC within 180 days of her termination.

11. Since plaintiff filed her charge with the EEOC on May 17, 1995 and the defendant did not allegedly provide a negative employment reference until September of 1996, plaintiff could not have possibly included this retaliation claim in her EEOC charge. Thus, plaintiff has never filed a charge of retaliation by negative employment reference with the EEOC. Although the defendant has not raised this issue, the court finds that the retaliatory negative reference claim is properly before this court because this additional claim is reasonably within the scope of plaintiff's May 1995 charge filed with the EEOC, thus eliminating plaintiff's need to file an additional EEOC charge. *See Reddinger v. Hospital Cent. Serv.*, 4 F.Supp.2d 405, 409–10 (E.D.Pa. 1998) (concluding that plaintiff does not need to file a separate EEOC charge in order to exhaust administrative remedies when new claims of discrimination, which arose during the pendency of EEOC investigation, are fairly within the scope of original charge).

*v. Big Brothers/Big Sisters of America,* 944 F.Supp. 405, 407 (E.D.Pa.1996) (*citing Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1415 n. 6 (10th Cir.1993)). "A plaintiff 'may not base her ... suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct.'" *Rush,* 113 F.3d at 481 (*quoting Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir.1996)).

▬ To establish that a claim otherwise time barred falls within the continuing violation doctrine, the plaintiff must establish the following two elements: 1) plaintiff must demonstrate that at least one act occurred within the filing period; and 2) the plaintiff must establish that the harassment is " 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" *West,* 45 F.3d at 754–55 (citing *Jewett v. International Tel. and Tel. Corp.,* 653 F.2d 89, 91 (3d Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981)). "Under this theory, the plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *Id.* at 744. Although the Third Circuit has not adopted a per se rule, it has recognized that a properly alleged hostile work environment claim also constitutes a continuing violation. *Id.* at 755. "A plaintiff satisfying these requirements may present evidence and recover damages for the entire continuing violation, and the 300–day filing period will not act as a bar." *Rush,* 113 F.3d at 481 (*citing West,* 45 F.3d at 755).

In determining whether the prior incidents of discrimination constitute a continuing course of discrimination or whether they are discrete unrelated acts, the Third Circuit has adopted the approach used by other Courts of Appeals and considers the following list of factors: 1) subject matter (whether the violation constitute the same type of discrimination); 2) frequency; and 3) permanence (whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate). *West,* 45 F.3d at 754; *see also Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir.1983); *Waltman v. International Paper Co.,* 875 F.2d 468, 474–75 (5th Cir.1989).

Even viewing the facts in the light most favorable to plaintiff, which the court must do at this stage, the court concludes that the continuing violations theory is not viable in this case. This is so because, given plaintiff's admissions that she was aware of Anderson's hostile treatment shortly after January 1994 and, at the latest, when plaintiff met with Simon T and advised him that Anderson's attitude had changed and be had began treating her in a hostile and rude manner after she notified Anderson about the sexual harassment allegations against Collins in February 1994, the court must conclude that plaintiff either knew or should have known that her rights under Title VII had been violated well before 300 days prior to the filing of her charge with the EEOC. "Thus, allowing plaintiff in this case to avoid the statutory timely filing requirement by invoking the continuing violations doctrine would be inconsistent with the doctrine's equitable premise 'that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.'" *Hicks,* 944 F.Supp. at 408 (*quoting Martin,* 3 F.3d at 1415 n. 6).

2. *Plaintiff's third claim for retaliatory negative employment reference fails because plaintiff cannot establish a prima facie case.*

▬ Defendant claims that a mere complaint to management is not sufficient to satisfy the first prong of the retaliation prima facie case. The court disagrees. Plaintiff has presented sufficient evidence that she engaged in protected activity by showing that she brought the allegations of

sexual harassment to Anderson's attention. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1085 (3d Cir.1996) (concluding that "protesting what an employee believes in good faith to be a discriminatory practice is clearly protected activity.") (*citing* 42 U.S.C. § 2000e–3(a); *Griffiths v, CIGNA Corp.,* 988 F.2d 457, 468 (3d Cir. 1993)).[12] However, plaintiff cannot satisfy the second prong of the prima facie test. Although plaintiff claims in her amended complaint that in September of 1996, Anderson provided extremely negative and false employment reference to more than one potential employer, *see* Pl.'s Amend. Compl. ¶ 57, she has presented no evidence that Anderson ever gave a negative reference. The only evidence of a negative employment reference is plaintiff's deposition testimony that she was told by someone at a company which she interviewed after leaving WDAS, that she was not offered a position because Anderson had given a negative reference about her. Plaintiff's testimony concerning what she was told by the prospective employer, however, is hearsay and is not admissible to support her claim. *See Philbin v. Trans Union Corp.,* 101 F.3d 957, 961 n. 1 (3d Cir.1996) (stating that hearsay statements should not be considered on a motion for summary judgment). Since plaintiff has failed to present any admissible evidence that Anderson ever gave a single negative employment reference, she cannot establish a prima facie case of retaliation by negative employment reference.

3. *Plaintiff's fourth claim for retaliatory termination fails because plaintiff cannot rebut defendant's legitimate, nondiscriminatory reason for eliminating plaintiff's position.*

▮ Unlike the retaliatory negative employment reference claim, plaintiff has

established a prima facie case of retaliatory termination. First, plaintiff has shown she engaged in protected activity by complaining about the sexual harassment to Anderson. Second, plaintiff has shown that she suffered an adverse employment action when she was terminated in January of 1995. Lastly, while the significant lapse of time between plaintiff's report of sexual harassment to Anderson (January of 1994) and her ultimate termination (January 1995) may weaken the causal connection between the two events, *see Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir.1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action ... negates any inference that a causal connection exists between the two."), for the purposes of this motion, the court will assume that plaintiff has presented sufficient evidence to create an inference that a causal connection did exist. Thus, plaintiff has met her prima facie burden of establishing a retaliatory termination claim. However, plaintiff's retaliatory termination claim must fail as she has not presented evidence to rebut Beasley's proffered legitimate, nondiscriminatory reason for her termination.

▮ Once plaintiff succeeds in establishing a prima facie case, "the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for plaintiff's [termination]." *Olson,* 101 F.3d at 951 (*citing McDonnell Douglas v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In order to satisfy its burden of production, the defendant need only "introduc[e] evi-

12. In *Aman,* the plaintiffs made complaints to their supervisors about what they believed were discriminatory practices directed at them and other African–American employees. The Third Circuit concluded the plaintiffs' complaints were "protected activity", but did not discuss whether it was because the discrimination was directed at them, at others,

or both. *See Aman,* 85 F.3d at 1085. In the instant case, plaintiff complained about discriminatory practices directed only at her co-workers. Because defendant has not raised the issue of whether a complaint to supervisors about discriminatory practices directed only at other employees is protected activity, the court needs not address this issue.

dence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994).

Beasley contends that the decision to eliminate plaintiff's LSM position was made as part of Beasley's business plan at WDAS to restructure management following Beasley's acquisition of the radio station. Def.'s Mot. for Summ.J. at 22–23. Specifically, Beasley presented testimony that as part of this restructuring, Beasley planned to eliminate the LSM position at most of its stations, including WDAS, and create a GSM position that would be responsible for overseeing both local and national sales. *Id.* at 23. Beasley believed that the creation of the GSM position and the elimination of the LSM position would bring consistency and efficiency to the sales department. Thus, Beasley has satisfied its burden of production.

After the plaintiff has established a prima facie case and the defendant has articulated a legitimate, nondiscriminatory reason for the termination, " 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3d Cir.1993) (*citing Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (*citing McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817)). "[T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, nondiscriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes,* 32 F.3d at 764. In other words, a "plain-

tiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence ... and infer that the employer did not act for [the asserted] nondiscriminatory reasons." *Id.* at 765 (citations omitted). The Third Circuit has held that "factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." *Josey,* 996 F.2d at 638–39.

Plaintiff seeks to counter defendant's proffered explanation for eliminating her position by pointing out that she was better qualified than Squires, the younger male who ultimately became GSM, and that Anderson subsequently admitted that this was so when he demoted Squires. In addition, plaintiff argues that Beasley's attempt to make plaintiff's separation with WDAS appear as if plaintiff voluntarily left her employment rather than admit she was fired, rebuts Beasley's proffered reason for eliminating her position. Pl.'s Mot. for Summ.J. at 40–41. Finally, plaintiff highlights that, unlike what occurred at WDAS, after Beasley eliminated the LSM position at another radio station, the former LSM at that station was put into the new position of GSM. Plaintiff argues that since Beasley did not directly place her into the GSM position at WDAS, but instead required her to interview for the position, Beasley's discriminatory intent is made evident and its legitimate, nondiscriminatory reason for plaintiff's job elimination should not be believed. Applying the teachings of *Fuentes* and its progenies the court concludes that plaintiff's proofs do not directly or circumstantially demonstrate the requisite "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions", *Fuentes,* 32 F.3d at 765, from which a rational factfinder could find

Beasley's legitimate, nondiscriminatory business reason for eliminating plaintiff's position "unworthy of credence." *Id.*

First, plaintiff's evidence does not dispute the central premise of defendant's proffered explanation that, as a part of a corporate restructuring and in an effort to create cohesiveness and efficiency within the sales department, Beasley decided to eliminate the LSM position and create a new GSM position. In other words, plaintiff's contentions that she was more qualified than the younger male who Beasley ultimately hired as the new GSM and that Beasley improperly attempted to characterize her separation with WDAS as a resignation, even if true, do not weaken Beasley's assertion that the elimination of plaintiff's LSM position was part of a corporate-wide business plan to restructure the sales department.

Second, plaintiff's evidence concerning the circumstances surrounding another Beasley radio station's elimination of its LSM position does not rebut defendant's legitimate, nondiscriminatory reason, but instead supports Beasley's assertion that the elimination of the LSM position was part of a corporate restructuring that occurred at most Beasley stations at that time. This evidence confirms that Beasley had a corporate-wide plan to restructure the sales department and was not targeting plaintiff when it eliminated her position.

Finally, the contention that Beasley's requirement that plaintiff interview for the job, rather than placing her directly into the position displays Beasley's true discriminatory intent is without merit. Again, this evidence does not address Beasley's reason for eliminating her position. Additionally, although given the opportunity, plaintiff choose not to interview for the LSM position at WDAS. Plaintiff cannot now argue that the refusal to place her in the new GSM position is further evidence of discrimination by Beasley, when plaintiff effectively precluded Beas-ley from considering her for the LSM position along with the other applicants.

In summary, because plaintiff has not presented sufficient evidence that would allow a factfinder to reasonably infer that Beasley "did not act for [the asserted] nondiscriminatory reasons", *Fuentes,* 32 F.3d at 765, summary judgment will be granted.

### D. *Plaintiff's Age and Gender Discrimination Claims.*

■■■■■■ Plaintiff also claims she was unlawfully terminated on the basis of her gender and age. The elements a plaintiff must prove to establish a prima facie case of age or gender discrimination are: 1) plaintiff belongs to the protected class; 2) plaintiff was qualified for the position in question; and 3) plaintiff suffered an adverse employment decision. *See, e.g., Pivirotto v. Innovative Sys. Inc.,* 191 F.3d 344, 353–56 (3d Cir.1999) (plaintiff not required to prove that she was replaced by someone outside her class in order to make out a prima facie case of gender discrimination); *Showalter v. University of Pittsburgh Medical Center,* 190 F.3d 231, 234–36 (3d Cir.1999) (plaintiff not required to prove that she was replaced by someone outside her class in order to make out a prima facie case of age discrimination). Plaintiff has established a prima facie case of age and gender discrimination by presenting the following evidence: she is a female individual over the age of forty; she was qualified for job of GSM; and she suffered an adverse employment action. However, as discussed above, because plaintiff has not presented sufficient evidence to rebut Beasley's proffered legitimate, nondiscriminatory reason for eliminating plaintiff's position, plaintiff's age and gender discrimination claims also must fail.

## IV. CONCLUSION

Two of plaintiff's retaliation claims are barred because plaintiff did not file her charge with the EEOC within 300 days

from when those adverse employment actions occurred, and those retaliation claims are not saved by the continuing violations doctrine. In addition, plaintiff's claim for retaliatory negative employment reference must fail because plaintiff has not presented sufficient evidence to establish a prima facie case. Furthermore, although plaintiff has satisfied a prima facie case of retaliatory termination and unlawful termination on the basis of gender and age, after defendant satisfied its burden of production by articulating a legitimate, non-discriminatory reason for eliminating plaintiff's position at WDAS, plaintiff has failed to satisfy her burden of showing that the reason offered by the defendant was not its true reasons, but were a pretext for discrimination. Therefore, the court will grant summary judgment in favor of defendant on all claims.