# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 99-3172

_____

Tracy Williams,                          *
                                         *
            Appellee,                    *
                                         *
      v.                                 *
                                         *
City of Kansas City, MO,                 *
                                         *
            Appellant.                   *

                                    Appeals from the United States
                                    District Court for the
                                    Western District of Missouri.

_____

No. 99-3273

_____

Tracy Williams,                          *
                                         *
            Appellant,                   *
                                         *
      v.                                 *
                                         *
City of Kansas City, MO,                 *
                                         *
            Appellee.                    *

                                 _____

Submitted: May 8, 2000

Filed: August 16, 2000
_____

Before RICHARD S. ARNOLD and HEANEY, Circuit Judges, and MAGNUSON[1],
    District Judge.
_____

HEANEY, Circuit Judge.

Tracy Williams sued the City of Kansas City (the City) for creating and maintaining a hostile work environment and for retaliation. Following trial, the jury returned verdicts in favor of Williams on both claims, and the district court entered judgment accordingly. The City appeals the judgment, arguing that the evidence was insufficient to support either claim. The City also argues that the admission of certain evidence was error and mandates a new trial. Williams cross-appeals the district court's remittitur of her back pay award and denial of punitive damages on her retaliation claim.

We conclude that the evidence presented by Williams was sufficient to support the jury's verdict on her hostile work environment claim, but was insufficient to sustain the verdict on her retaliation claim. We further conclude that the district court's evidentiary errors do not warrant a new trial. Accordingly, we affirm the district court in part and reverse in part.[2]

_____

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

[2]Because we hold that Williams did not present sufficient evidence to support the jury verdict on her retaliation claim, we need not reach the ancillary compensatory and punitive damage issues raised by Williams.

# FACTS

Tracy Williams was employed as a stock clerk for several years in the City's Public Works Department. On April 18, 1996, William Arthur Horn began working with the City as Supervisor of Stores and Security. He was Williams' superior, and they worked in the same area.

## Evidence of Hostile Work Environment

For his first few weeks on the job, Horn spent his time observing the workings of the department, and had very little contact with his subordinates. On May 8, 1996, Horn had his first substantive contact with Williams. He sent her an e-mail message commending her on her efforts and joking that he wished he could clone her. Shortly thereafter, Horn called Williams into his office. He informed her that he had received a complaint about her telephone etiquette, but that he would take no disciplinary action. Near this same time, Williams was advised by a fellow employee to be wary of Horn because he often had affairs with co-workers.

For the next several weeks, Horn routinely called Williams into his office to talk. The topics of their conversations varied. Horn would often probe Williams about the private lives of fellow employees. He told Williams that he felt she was the only one he could talk to, and that she could have all the power she wanted through him. He also asked her to coordinate a picnic and canoe trip for the office, which they both could attend.

Although other employees were more skilled with the City's computer system, Horn asked Williams to assist him. He would call her into his office and have her perform tasks on his computer while standing behind her. At one point, when

3

Williams told Horn that she was too busy to help him with the computer, he suggested she come in on the weekend to train him.  She declined the offer.

During this same period, Horn was involved in a conversation with another male employee about men exaggerating the size of their penises.  He then pointed his finger at Williams and said, "Now, don't you laugh."  On another occasion, Horn approached Williams and told her, "It's not the size of the lead in your pencil, it's how you sign your name."  Williams did not provoke either comment or participate further in either conversation.

Williams' desk was in front of a window where the City's mechanics would place orders.  The mechanics often would ask Williams for her assistance, apparently keeping her from her other work.  To remedy the situation, Williams asked that her desk be moved away from the window and closer to the facsimile machine, which she often used.  Instead, Horn moved her desk slightly away from the window to a position where Williams was in Horn's line of vision as he sat as his desk.  Horn explained to his supervisor that he moved Williams to this location so that he could observe her closely.

At trial, Williams and other employees testified that Horn would often stare at Williams' body during the months they worked together.

Evidence of Retaliation

In the early part of June, Horn asked Williams to come into his office for another of their frequent meetings.  Williams replied that she did not have time to visit in his office, and asked Horn to leave her alone and let her do her job.  Horn slammed his office door, and stopped talking to Williams for several weeks.

4

Williams had long been planning a family trip in July. She had asked for vacation time to take the trip, which was approved. On or about June 20, Horn spoke to Williams for the first time since Williams asked Horn to leave her alone. He advised her that, according to his calculations, she did not have enough paid leave to take her vacation. Williams was in fact two hours short. Williams knew that she had not accrued enough paid leave, but planned to take two hours of unpaid leave, commonly referred to as "dock time." Although dock time generally had been granted to vacationing employees in the past, it was not an entitlement. Rather, it was a discouraged method of taking time off of work. Nevertheless, Williams testified that she knew that she would be allowed to use dock time to take her vacation and that, despite Horn's observations, he could not deny her previously-approved vacation. Almost immediately after Horn advised Williams of the discrepancy between her scheduled vacation and her accrued vacation hours, she tendered her resignation.

## DISCUSSION

## I. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

The City contends that it is entitled to judgment as a matter of law on both of Williams' claims because her evidence at trial was insufficient to support the verdicts. However, the City did not move for judgment as a matter of law at the close of all the evidence, and generally "a litigant who fails to move for judgment as a matter of law at the close of the evidence cannot later argue--either in a post-trial Rule 50 motion or on appeal--that the verdict was supported by insufficient evidence." Pulla v. Amoco Oil Co., 72 F.3d 648, 655 (8th Cir. 1995). We have recognized an exception to this rule where a Rule 50 motion was made shortly before the close of the evidence and the district court indicated that another Rule 50 motion at the close of all evidence would be unnecessary. See BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners, 90

5

F.3d 1318, 1325 (8th Cir. 1996). If a party does not comply with Rule 50's requirements or fall within our recognized exception, we review only for plain error, and reverse only if the jury's verdict would result in a manifest miscarriage of justice if permitted to stand. See Pulla, 72 F.3d at 655.

The City moved for judgment as a matter of law following Williams' case-in-chief. The district court denied the motion and urged the City to proceed. The City would have us view the district court's curt denial of its original motion for judgment as a matter of law as a signal that another motion would be futile and unnecessary. However, the record reveals no indication from the district court that the City was relieved of its responsibility to renew the motion. The City's own perception that renewing its motion would be pointless does not excuse its noncompliance with the rules of procedure.

Because the City failed to renew its motion for judgment as a matter of law at the close of the evidence without justification, our review of the City's sufficiency of evidence arguments is limited to the plain error standard. See id.

B.     Hostile Work Environment

The jury found that Williams was sexually harassed in that Horn subjected her to a hostile work environment. To prevail on a hostile work environment claim, "[t]he plaintiff must show both that the offending conduct created an objectively hostile work environment and that she subjectively perceived her working conditions as abusive." Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997). Not all unpleasant conduct creates a hostile work environment. See id. Rather, the plaintiff must show that she was singled out because of her gender, and that the conduct was severe and pervasive. See id. "There is no bright line between sexual harassment and merely unpleasant conduct so a jury's decision must generally stand unless there is trial error." Id.; see Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998) ("Once there is

6

evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury.")

The district court did not plainly err by permitting the five-thousand-dollar jury verdict to stand. Williams presented evidence that Horn stared at her body, made inappropriate sexual comments to her, and told her that she could have all the power she wanted through him. She further presented evidence that Horn held private meetings with her, invited her to join him at City functions, suggested that they meet at work on the weekend, and moved her desk into his line of sight. While much of this evidence is generally innocuous, when considered in its totality it supports Williams' interpretation.

C.    Retaliation

The jury further found that Horn retaliated against Williams, resulting in her constructive discharge. To establish a retaliation claim, the plaintiff must prove that she was engaged in a protected activity, such as complaining about the harasser's conduct or confronting the harasser, and that as a result she suffered adverse employment action. See Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997). Adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities. See Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 969 (8th Cir. 1999).

Williams' theory at trial was that the retaliatory trauma she suffered was so severe that it resulted in her constructive discharge. Constructive discharge occurs when an employer deliberately makes an employee's work environment so intolerable that resignation is the employee's only plausible alternative. See Spears v. Missouri Dept. of Corrections & Human Resources, 210 F.3d 850, 854-55 (8th Cir. 2000). "Such intolerability of working conditions is judged by an objective standard, not the

plaintiff's subjective feelings." Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (8th Cir. 1998).

Williams retaliation claim fails because she has not produced sufficient evidence of adverse employment action. Her evidence showed that after she requested that Horn leave her alone, he stopped talking to her altogether for about two weeks. Viewed in the light most favorable to Williams, Horn's silent treatment is at most ostracism, which does not rise to the level of an actionable adverse employment action. See Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692-93 (8th Cir. 1997).

Williams argues that Horn's statement regarding Williams' vacation time constitutes adverse employment action, citing Coffman v. Tracker Marine, L.P., 141 F.3d 1241 (8th Cir. 1998). In Coffman, the plaintiff alleged that her employer retaliated against her by denying her vacation time. In negotiating her employment contract, the plaintiff had specifically bargained for paid leave on all federal holidays. See id. at 1244. Following the plaintiff's harassment complaint, the employer claimed that there was a misunderstanding in drafting the employment contract, and that she was no longer permitted to take paid leave on federal holidays. We held that the denial of Coffman's vacation days was sufficient adverse employment action to sustain a claim because it was a material change in her existing employment benefits. See id. at 1245.

The difference between Williams' case and Coffman is twofold. First, Williams was not denied any vacation time. In fact, she testified that her vacation was already approved, and that she knew that Horn could not deny her vacation or the dock time necessary to take it.

Second, even if Williams had been denied dock time, this would not rise to the level of actionable adverse employment action. Dock time was neither an entitlement nor an employment benefit of working for the City. It was granted at the City's discretion. Although dock time was regularly granted, it was discouraged. While not

8

being permitted to take dock time certainly would have made Williams' job less pleasant, "not everything that makes an employee unhappy is adverse employment action." Id.

Moreover, even if Horn's vacation comments did constitute an adverse employment action, Williams' constructive discharge claim would fail nevertheless, because her ensuing resignation was premature. An employee "has an obligation not to assume the worst and jump to conclusions too quickly." Phillips, 156 F.3d at 890 (internal quotations omitted). Following Horn's comments, Williams made no attempt to inform her supervisors that she felt Horn was acting inappropriately. Rather, she abruptly quit. It is difficult to find a employee's resignation objectively reasonable and subject an employer to liability for constructive discharge when the employee quits without giving her employer a chance to fix the problem. See id. Because Williams did not permit the City to address her concerns, we cannot say that Williams only plausible alternative was to resign. See e.g., Spears, 210 F.3d at 855.

## II. EVIDENTIARY ERRORS

The City challenges the admission of certain evidence that was damaging to its case. We review the district court's rulings on admissibility of evidence for an abuse of discretion. See Banghart v. Origoverken, A.B., 49 F.3d 1302, 1304 (8th Cir. 1995).

Of the evidentiary errors claimed by the City, three merit discussion. The City sought to escape liability by showing that it took steps to prevent and correct sexually harassing conduct, and that Williams failed to avail herself of the City's internal sexual harassment complaint process. See Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998). Williams argued that to the extent she did not follow the City's harassment policy, it was because the she believed the policy was ineffective. She presented evidence that after she left the City's employ, Horn made a sexually explicit comment to Anita Lally, a female co-worker. Lally complained to the City, which then

investigated the incident but took no serious action. The district court ruled that the City's <u>Faragher</u> defense opened the door to evidence of Lally's complaint because the City's handling of Lally's complaint was probative of whether its harassment policy was effective.

We cannot agree. In order to be admissible, evidence must be relevant. <u>See</u> Fed. R. Evid. 402. The incident leading to Lally's complaint and the subsequent proceedings occurred after Williams left the City. As such, the City's handling of Lally's complaint could not have affected Williams' prior decision not to use the City's internal grievance procedure. Moreover, because the City's investigation of Lally's complaint took place after Williams left the City's employ, it is not relevant to whether the City had an effective sexual harassment policy in place while Williams was there. Thus, the district court erred in admitting this evidence.

The district court also admitted evidence of two prior consensual relationships that Horn began while on the job. One of these relationships involved a customer. The other involved a subordinate. Neither occurred while Horn was employed by the city. Both affairs were temporally removed, with the older of the two being nineteen years old at the time of trial.

It is well settled that evidence of prior acts may not generally be admitted to prove conduct in conformity therewith. <u>See</u> Fed. R. Evid. 404(b). However, such evidence may be admissible for another purpose, such as to prove the motive or intent of the actor. <u>See</u> <u>id.</u> Prior act evidence must also be proved by a preponderance of the evidence, relevant to a material issue, more probative than prejudicial, and close in time and similar in kind to the conduct at issue. <u>See</u> <u>United States v. Aranda</u>, 963 F.2d 211, 215 (8th Cir. 1992).

Employing the above factors governing admissibility, Horn's prior affairs were clearly inadmissible. First, they were minimally relevant to any issue in the case.

Williams argues that Horn's prior romances established his motive to accost her and established that he intended to engage her in an affair. However, Williams' logic fails with regard to Horn's prior romance with a customer. The dynamic differences between a coworker and a customer counsels against considering them as equivalents when it comes to workplace romances. A prior relationship with a customer is simply not probative of whether Horn would seek a relationship with a coworker.

With regard to Horn's affair with a coworker, the relevance of such evidence is greatly tempered by the age of the affair. An affair that took place nineteen years ago does little to establish anything about a person's current day motive or intent. Whatever minimal relevance this evidence did have was outweighed by its inflammatory nature.

Finding that the district court erred in admitting this evidence does not end our analysis. Even if the district court abused its discretion, the errors must affect a party's substantial rights to warrant a new trial. See Banghart, 49 F.3d at 1304. Evidentiary errors affect a party's substantial rights when the cumulative effect of the errors is to substantially influence the jury's verdict. See Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 889 (8th Cir. 1998).

After carefully reviewing the record, we conclude that the jury verdicts were not unduly influenced by the evidentiary errors. Although the improperly-admitted evidence may have inflamed the jury, its effect was tempered by Williams' testimony--corroborated by her fellow employees--of Horn's conduct towards her. Horn was not tried solely on the basis of his prior consensual workplace romances, nor was he tried on the basis of his interaction with Lally. Rather, the jury was provided with direct evidence of Horn's inappropriate conduct. Accordingly, the evidentiary errors do not warrant a new trial.

11

**CONCLUSION**

For the reasons stated above, we affirm the district court's judgment in favor of Williams on her hostile work environment claim, and reverse the judgment in favor of Williams on her retaliation claim.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.