Patricia G. CRONIN, Plaintiff,

v.

MARTINDALE ANDRES &
CO., et al., Defendants.

No. CIV.A. 99–5555.

United States District Court,
E.D. Pennsylvania.

March 27, 2001.

Michael M. Weinkowitz, Console Law Offices, LLP, Philadelphia, PA, for Plaintiff.

Kathryn H. Levering, James G. Fannon, Drinker, Biddle & Reath, LLP, Philadelphia, PA, for Defendants.

*MEMORANDUM–ORDER*

EDUARDO C. ROBRENO, District Judge.

**AND NOW,** this **27th** day of **March, 2001,** it is hereby **ORDERED** that defendants' motion for summary judgment and motion to dismiss for lack of subject matter jurisdiction (doc. no. 45) is **GRANTED** in part and **DENIED** in part. The court's order is based on the following reasoning:

Plaintiff contends that defendants Martindale Andres & Co. ("MA & C") and Keystone Financial, Inc. ("KFI") created a hostile work environment and retaliated against her after she made complaints to management, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). For the foregoing reasons, defendants' motion for summary judgment is granted with respect to plaintiff's sexual harassment claim, but is denied with respect to her retaliation claim. In addition, defendant KFI's motion to dismiss is denied.

Defendants are entitled to summary judgment on plaintiff's Title VII and PHRA hostile work environment claim. Plaintiff filed her administrative complaint with the Pennsylvania Human Rights Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") on June 18, 1998. Title VII requires that an employment discrimination claim be filed within 300 days of the alleged discrimination. *See* 42 U.S.C. 2000e–5(e)(1). The PHRA provides for an 180 day window within which to file a claim. Therefore, the court can only consider those events which took place after August 22, 1997 for purposes of plaintiff's Title VII claim and December 20, 1997 for purposes of plaintiff's PHRA claim.

■ Plaintiff contends that under the continuing violation theory, the court may consider events taking place prior to the prescribed statutory period if the plaintiff " 'can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant.' " *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir.1997) (*quoting West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). Even under the continuing violation theory, however, the statutory clock begins to run at the time that the plaintiff becomes aware, or should have become aware, that her rights had been violated under Title VII. *See Jones v. WDAS FM/AM Radio Stations*, 74 F.Supp.2d 455, 463 (E.D.Pa.1999) (holding that the continuing violations theory was inapplicable where the "plaintiff either knew or should have known that her rights under Title VII had been violated well before 300 days prior to the filing of her charge with the EEOC").

■ In this case, plaintiff admitted in her deposition that she complained to Daniel Mullen, Director of Investment Operations for MA & C, of sexually discriminatory conduct on the part of MA & C and its employees in August, 1997. *See* Pl.'s Ex. 3, Cronin Dep. at 341–42. Mullen's memorandum concerning his conversation with plaintiff confirms that plaintiff made her complaints to him on August 5, 1997. *See* Defs.' Ex. 3. Therefore, the court finds that plaintiff was aware that she was being subjected to sexual discrimination on August 5, 1997 at the latest. Because plaintiff failed to file an EEOC claim within 300 days of August 5, 1997, she cannot rely upon the continuing violation theory. Accordingly, the court will consider only those events that took place after August 22, 1997, 300 days prior to plaintiff's filing of her administrative complaint.

Defendants contend that plaintiff has not pointed to sufficient evidence of sexual harassment so as to create a genuine issue of fact as to whether the harassment she was subjected to was pervasive and regular. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir.1999) (requiring a plaintiff asserting a sexual harassment claim, to prove that: (1) she suffered intentional discrimination; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable woman in

her position; and (5) her employer has respondeat superior liability.)

As evidence of the sexual harassment, plaintiff points to: (1) her search of a company computer which revealed offensive material; (2) MA & C's refusal to grant her leave, either paid or unpaid, to take a trip to California in December, 1999, which resulted in what she alleges to be her discharge from MA & C; (3) a joke made by Mullen that made reference to the maximum number of women golfers permitted in a golf foursome and contemporaneous reference to posted Labor Anti–Discrimination Guidelines posted nearby; and (4) her exclusion from a company golf outing in favor of a male employee.

■■■ Title VII does not "mandate[ ] a sanitized work place as a matter of law." *Johnson v. Professional Services Group, Inc.*, No. 4–93–1197, 1996 U.S. Dist. LEXIS 7896, at *15 (D. Minn. April 17, 1996). The mere fact that sexually offensive material exists somewhere on company property does not constitute evidence of sexual harassment. Rather, the offensive materials must be either aimed at the plaintiff or generally displayed to the public. *See id.* (holding that results of a female plaintiff's search of the male employees' locker room for sexually offensive material could not form basis for liability); *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990) (requiring public displays of sexist behavior to trigger liability under Title VII). In this case, plaintiff affirmatively sought out the offensive materials by searching for it on the company's computers at her own initiative. But for plaintiff's own work as a sleuth, she would not have been subjected to the offensive materials. Therefore, because in this case the materials were neither public nor aimed at plaintiff, but rather hidden from view until plaintiff voluntarily exposed herself to them, the existence of the offensive materi-

als in the company's computer is not evidence of a hostile environment.

■■■ The events concerning the denial of plaintiff's request to take her trip to California, the second piece of evidence relied upon by plaintiff, likewise cannot be considered as evidence of sexual harassment. "Not every friction in the workplace between a man and a woman supports a claim of sexual harassment. Nor does Title VII enact a general labor code which addresses all forms of disputes between co-workers." *Kent v. Henderson*, 77 F.Supp.2d 628, 635 (E.D.Pa.1999). In a sexual harassment claim, a plaintiff "must always prove that the conduct at issue . . . constitute[s] discrimination . . . because of . . . sex." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Plaintiff thus has the burden of raising a genuine issue of fact of whether but for her sex, MA & C would have treated her differently. Plaintiff points to nothing but conjecture to suggest that her supervisors' actions in denying her permission to take her planned vacation was taken because of her sex. The court finds that plaintiff has not raised a genuine issue of fact as to whether MA & C's conduct in denying her permission to take her planned vacation in December, 1998, constitutes discrimination because of her sex.

■■■ In light of the court's exclusion of the evidence of offensive material contained in the company's computer and the dispute over the trip to California, plaintiff is left with only two alleged instances of sexual harassment that took place during the statutory period. A hostile work environment is "a workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift*

*Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Clearly, the two events cited by plaintiff are more properly characterized as isolated incidents of inappropriate behavior, which even if true do not satisfy the requirement that the sexually harassing conduct alleged be pervasive and regular. *See, e.g., Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1365–66 (10th Cir.1997) (finding that five "sexually-oriented, offensive" statements were insufficient to survive a motion for summary judgment on a sexual harassment claim); *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995) (holding that nine instances of offensive behavior were insufficient to survive a motion for summary judgment on a sexual harassment claim). Accordingly, defendants have shown that there is no genuine issue of fact as to whether the alleged sexual harassment was pervasive and regular, and are entitled to summary judgment on plaintiff's Title VII sexual harassment claim.

Furthermore, because plaintiff points to no evidence of sexual harassment that occurred after December 20, 1997, which is 180 days before her PHRA claim was filed, defendants are entitled to summary judgment on plaintiff's PHRA sexual harassment claim.

■ Defendants' motion with respect to plaintiff's retaliation claim is denied. Defendants contend that plaintiff quit her position at MA & C and thus did not suffer an adverse employment action, which the parties agree is an element of plaintiff's prima facie case. The court finds, however, that there is a genuine issue of fact as to whether plaintiff resigned or was discharged from her employment at MA & C, and thus whether plaintiff suffered an adverse employment action.

Defendants' reliance on *Williams v. City of Kansas City,* 223 F.3d 749 (8th Cir. 2000), in support of their position is mis-

placed. Although in *Williams,* as in this case, the plaintiff's separation from employment was precipitated by a dispute over whether the plaintiff was entitled to take a vacation despite the fact that she did not have sufficient vacation time to do so, the plaintiff in *Williams* "abruptly quit" after being told that her request for "dock time" was denied. *Id.* at 754. The court in *Williams* emphasized that the plaintiff never gave the employer "a chance to fix the problem." *Id.*

By contrast, in this case plaintiff responded to MA & C's letter, which informed her that "failure to report as scheduled will be considered job abandonment—voluntary dismissal," Def.'s Ex. 19 at D–45, with a letter of her own expressly stating that she was not resigning. *See* Defs.' Ex. 15 at D–69. Plaintiff took her vacation but then reported to work on January 2, 1998, as she stated that she would do in her response to MA & C's letter. Therefore, plaintiff's actions in this case are much different than those of the plaintiff in *Williams.*

Defendants' argument under *Siko v. Kassab, Archbold & O'Brien,* L.L.P., No. CIV.A. 98–402, 2000 WL 307247 (E.D.Pa. Mar.24, 2000) is similarly flawed. In that case, a dispute between the plaintiff and her employer arose as to how much pregnancy leave plaintiff was entitled to take. The employer sent the plaintiff a letter directing her to return to work by a particular date or the employer would consider her to have effectively tendered her resignation. The court rejected the plaintiff's argument that the letter terminated her employment and thus created an adverse employment action.

Like the Sixth Circuit in *Williams,* however, the court in *Siko* looked to the plaintiff's response, or lack thereof, to the letter. The court noted that the plaintiff did

not inform her employer of her intent to return to work on a different day, nor did she attempt to negotiate a different return date. In the instant case, plaintiff notified MA & C of her intent to return to work on January 2, 1998, and also attempted to negotiate with MA & C by, inter alia, offering to take work with her to California, working weekends upon her return from her trip, and taking an unpaid leave. *See* Defs.' Ex. 15 at D–69. Plaintiff's response to MA & C's letter was thus decidedly different than the response of the plaintiffs in both *Williams* and *Siko*, which the courts in *Williams* and *Siko* expressly relied upon in finding that those plaintiffs had not suffered adverse employment actions. Accordingly, there is a genuine issue of fact as to whether plaintiff quit her job or was terminated by MA & C.

■ Defendants also contend that there is no genuine issue of fact as to whether MA & C's stated nondiscriminatory reasons for denying plaintiff vacation time was pretext for its intent to retaliate against plaintiff for complaining to MA & C of sexual harassment. The court disagrees. Among the evidence that plaintiff points to in support of her claim that MA & C's stated reasons for denying her vacation time are the handwritten notes of MA & C's human resource manager, Karen Wallace, which detail a conversation that she had with Robert Andres, President of MA & C. Wallace's notes, viewed in the light most favorable to plaintiff, *see Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir.2000), suggest that the two discussed a "game plan" for dealing with plaintiff where they would "continue to build the case based on performance issues."[1] At this stage of the proceeding, these notes raise the question as to wheth-

er MA & C intended to "build a case" for firing plaintiff in response to her sexual harassment complaints. Accordingly, there is a genuine issue of fact as to whether MA & C's legitimate reasons for its alleged termination of plaintiff were pretextual, and defendants' motion for summary judgment as to plaintiff's retaliation claims is denied.

Because the conduct upon which plaintiff relies for its retaliation claim took place after December 20, 1997, and thus is within 180 days of plaintiff's filing of her PHRA retaliation claim, defendants' motion for summary judgment on the PHRA retaliation claim is denied.

■ Defendants also seek summary judgment on plaintiff's claim for punitive damages under the PHRA and Title VII. As to the PHRA claim, punitive damages are unavailable under the statute. *See Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 748 (1998). To survive a motion for summary judgment on a claim for punitive damages under Title VII, a plaintiff must point to evidence that creates a genuine issue of fact as to whether defendants acted with "malice or with reckless indifference to [her] federally protected rights." *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). As previously discussed, plaintiff has pointed to evidence suggesting that, after plaintiff complained of sexual harassment, MA & C management instituted a plan to "build a case" for terminating plaintiff's employment. This allegation raises a genuine issue of fact as to whether defendants acted with malice or reckless indifference to plaintiff's right to make a sexual harassment complaint without fear of retaliation. Accordingly, defen-

---

1. To the extent that a dispute exists whether the notes as written by Ms. Wallace actually say what plaintiff claims that they say, that dispute raises a genuine issue of fact that is a question for the jury at trial.

dants' motion for summary judgment as to plaintiff's claim for punitive damages under Title VII is denied.

Keystone Financial Inc. ("KFI"), MA & C's parent corporation, contends that the claims against it should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). As an initial matter, the parties dispute what is the correct standard for the court to apply in considering KFI's motion. Defendants contend that as a motion filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court may make its own factual determinations, and plaintiff bears the burden of proof by a preponderance of the evidence. Plaintiff contends that under *Robinson v. Dalton*, 107 F.3d 1018 (3d Cir.1997), a motion to dismiss for failure to exhaust the administrative process should be treated as a Rule 12(b)(6) motion.

In *Robinson*, however, the issue was whether the plaintiff had filed his EEOC complaint in a timely manner. The Third Circuit noted that questions concerning the timely exhaustion of administrative remedies are "in the nature of statute of limitations," and thus treated differently than strict questions of subject matter jurisdiction. *Id.* at 1021 (quoting *Hornsby v. United States Postal Service*, 787 F.2d 87, 89 (3d Cir.1986). The court in *Robinson* reaffirmed its prior holding that in a Rule 12(b)(1) motion, a "trial court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson*, 107 F.3d at 1021 (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir.1982)). Accordingly, for the purposes of KFI's motion to dismiss, plaintiff has no factual presumption in her favor and bears the burden of proving by a preponderance

of evidence that the court has subject matter jurisdiction over KFI as a defendant.

KFI contends that the court lacks subject matter jurisdiction over it as a defendant because plaintiff did not name KFI in her administrative complaint filed with the EEOC and the PHRC. Although as a general rule a plaintiff may not bring a Title VII action against a party not named in the underlying administrative complaint, there is an "identity of interest" exception to this rule where: (1) the unnamed party received actual notice of the complaint; and (2) there is a shared commonality of interest between the named and unnamed parties. *See Schafer v. Board of Public Education*, 903 F.2d 243, 251–52 (3d Cir.1990). This exception only applies, however, to plaintiffs who where not represented by counsel at the time that the administrative complaint was filed. *See Harrington v. Hudson Sheraton Corp.*, 2 F.Supp.2d 475, 478 (S.D.N.Y. 1998); *Tarr v. Credit Suisse Asset Mgmt.*, 958 F.Supp. 785, 794 (E.D.N.Y.1997); *Sharkey v. Lasmo*, 906 F.Supp. 949, 955 (S.D.N.Y.1995).

KFI contends that plaintiff was represented by her former husband, Kevin Cronin, Esquire, at the time that she filed her administrative complaint. At her deposition, plaintiff answered in the affirmative to questions asking her whether (1) Mr. Cronin "advised" her in connection with her filing of her administrative complaint; and (2) Mr. Cronin provided her "counsel" at the time of her filing of the administrative complaint. Pl.'s Ex. 3, Cronin Dep. at 828. Plaintiff points to affidavits from both herself and Mr. Cronin which deny KFI's claim. *See* Pl.'s Ex. 20 & 33.

Although it is true that a party may not inject an issue of fact into the record by disputing with an affidavit their own earlier testimony given under oath, the rule does not apply where the earlier

testimony is either ambiguous or confusing. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (stating that, in the context of a summary judgment motion, courts should not give weight to a party's affidavit that contradicts that party's earlier deposition "without explaining the contradiction or attempting to resolve the disparity"). The court finds that the transcript of plaintiff's deposition is ambiguous, because it is subject to at least two reasonable interpretations. In answering the question of whether Mr Cronin advised her at the time of the PHRC filing, plaintiff stated that "[h]e advised me to file. He did not go to the PHRC with me." Mr. Cronin's mere suggestion that plaintiff file a complaint is not the type of specific legal advice given to plaintiff such that she can be deemed to have been represented by counsel. Furthermore, given that Mr. Cronin was plaintiff's husband at the time, it is unclear whether Mr. Cronin was providing plaintiff with spousal or legal advice, or both. Therefore, the court will consider plaintiff's and Mr. Cronin's affidavits because they explain any disparity between her deposition and her current position rather than merely contradicting it. *See id.*

Mr. Cronin's affidavit states that he was not even aware that plaintiff had filed a complaint with the PHRC in June, 1999, and that he gave her no advice regarding with whom to file a complaint or what the contents of the complaint should be. *See* Pl.'s Ex. 33 at 2–3. Therefore, based on the Cronins' affidavits and in light of the spousal relationship that existed between plaintiff and Mr. Cronin, the court concludes that Mr. Cronin did not act as plaintiff's counsel when she filed her administrative complaint.

KFI also claims that the legal advice that Mr. Cronin's colleague, Rosalia Cos-

ta–Clarke, provided to plaintiff is also evidence that she was represented by counsel. The record is clear, however, that Costa–Clarke provided plaintiff with counsel in connection with her unemployment compensation claim in January and February of 1999. *See id.* at 3. Plaintiff, of course, did not file her administrative complaint until June 18, 1999. Therefore, Costa–Clarke cannot be deemed to have represented plaintiff in the filing of her PHRC complaint several months after she represented plaintiff in her unemployment compensation claim. Accordingly, the court finds that plaintiff has proven by a preponderance of the evidence that plaintiff was not represented by counsel at the time that she filed her complaint with the PHRC.

Given the court's finding that plaintiff was not represented by counsel at the time of the filing of her administrative complaint, the identity of interest exception to the general rule that a plaintiff may not bring a Title VII action against a party not named in the underlying administrative complaint applies if: (1) the unnamed party received notice of the complaint; and (2) there is a shared commonality of interest between the named and unnamed parties. *See Schafer v. Board of Public Education,* 903 F.2d 243, 251–52 (3d Cir.1990).

As to the first prong that the administrative complaint provide notice to the unnamed party, in this case KFI, plaintiff claims that her responses to the PHRC standard form questionnaires that she filled out at the same time that she filed her PHRC complaint put KFI on notice. KFI argues that the court should not consider the questionnaires for the purpose of putting KFI on notice. The court finds, however, that this argument is not persuasive. In *Cook v. Applied Data Research,* No.CIV.A. 88–2894, 1989 WL 85068, at *6 (D.N.J. July 20, 1989), the

court found that an affidavit filed by the plaintiff one month after the filing of her EEOC complaint was relevant to the question of whether defendant had notice of the charges against it. Given that in this case the questionnaires were filed at the same time as the complaint, it is clear that the questionnaires are relevant to the question of whether KFI had notice of the charges against it.

In the questionnaires themselves, plaintiff listed the "name of organization your complaint is against" as "Martindale Andres & Co., Inc. (subsidiary of Keystone Financial, Inc.)." Pl.'s Ex. 39 at 1, 3, 4, 6 & 8. In response to the question "[w]hat do you hope to achieve by filing your complaint," plaintiff noted that, inter alia, she wanted to have KFI/MAC's sexual harassment policy changed. *Id.* at 2. Plaintiff also named Karen Wallace, human resource manager for KFI, as the person to whom she complained of sexual harassment as well as one of the persons who notified plaintiff of her alleged discharge. *See id.* at 5, 7. Therefore, the complaint and questionnaires, taken together, do not point exclusively to MA & C as the alleged wrongdoer, but instead indicate that the policies and conduct of KFI and its employees would be placed directly at issue. The court thus finds that the references to KFI in the questionnaires put KFI on notice that both its sexual harassment policy and the conduct of its human resource director was implicated by plaintiff's complaint, and that it was the subject of an investigation conducted by the EEOC and the PHRC.

 Turning to the second prong of the identity of interest exception test, it is clear that there is a commonality of interest between MA & C and KFI. The commonality of interest requirement essentially asks whether the interests of the named and unnamed parties are so similar " 'for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings.' " *Dixon v. Philadelphia Housing Auth.*, 43 F.Supp.2d 543, 546 (E.D.Pa.1999) (quoting *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981), and noting how the commonality of interest and notice requirements are derived from a four factor test articulated in *Glus* ). In other words, could MA & C, acting on behalf of both itself and KFI, have settled the matter with plaintiff at the administrative level? In this case, it is clear that the MA & C and KFI did not have divergent interests in the resolution of plaintiff's complaint, and that MA & C, if it chose to do so, could have brought about a final resolution on behalf of both itself and KFI. KFI's presence during the EEOC proceedings was not necessary to obtain a satisfactory conciliation and compliance on behalf of MA & C. Therefore, the court finds that there is a commonality of interests between MA & C and KFI.

Accordingly, the court finds that it has subject matter jurisdiction over KFI despite the fact that it was not named as a defendant in plaintiff's administrative complaint because (1) plaintiff was not represented by counsel at the time that she filed her complaint; (2) the complaint placed KFI on notice that it was the subject of an EEOC/PHRA investigation; and (3) KFI shared a commonality of interests with the named defendant, MA & C.

For the reasons stated above, defendants' motion for summary judgment granted with respect to plaintiff's hostile work environment claim and denied with respect to plaintiff's retaliation and punitive damages claims. In addition, KFI's

motion to dismiss for lack of subject matter jurisdiction is denied.

**AND IT IS SO ORDERED.**