# Davitt v. Wood Co.

C.P. of Lehigh County, no. 2000-C-0686.

*H. Thomas Hunt III,* for plaintiff.
*Oldrich F. Foucek III* and *George C. Hlavec,* for defendant The Wood Company.
*James T. Huber,* for defendant Bausch.

WALLITSCH, *J.,* April 30, 2002—Before the court is a motion for summary judgment filed by the defendants, The Wood Company and Larry Bausch (sometimes collectively referred to as "the defendants"). The plaintiff, Patricia Davitt opposes the motion for summary judgment.[1]

Davitt filed a complaint of discrimination against defendants with the Pennsylvania Human Relations Commission (PHRC) on September 10, 1999. This complaint asserted claims against the defendants for sexual discrimination, harassment, and retaliation. This complaint was also cross-filed with the Equal Employment Opportunity Commission (EEOC), which issued Davitt a notice of right to sue on May 22, 2000. On March 20, 2000, Davitt commenced this action by filing a praecipe for writ of summons. Subsequently, after pre-complaint dis-

---

1. The complaint also set forth causes of action on behalf of another plaintiff, Cynthia Mlodzienski. After oral argument, her case has settled. We will, therefore, only deal with Davitt's claims in this opinion.

covery was conducted, Davitt filed a complaint against the defendants on May 3, 2000. This initial complaint asserted common-law tort claims of slander and false light invasion of privacy. On August 17, 2000, Davitt filed an amended complaint adding claims against Wood for sexual discrimination, harassment and retaliation pursuant to title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 et seq.[2] The amended complaint also asserted additional common-law tort claims against Wood for negligent retention and negligent supervision.

Count I of Davitt's amended complaint asserts discrimination, harassment, and retaliation claims against Wood pursuant to title VII. In support of these claims, Davitt relies upon alleged statements made and actions committed by Wood's employees between July of 1986 and August of 2000 while she was employed by Wood at the Easton Hospital account. Defendants first argue that, to the extent that such claims are based on the conduct of Bausch, they are entitled to summary judgment because all of his alleged conduct occurred more than 300 days before Davitt filed her PHRC complaints.

In order to pursue a cause of action under title VII, a plaintiff must file an administrative complaint with the EEOC within 180 days of the alleged discrimination. 42 U.S.C. §2000e-5(a). This limitation period is increased to 300 days where the plaintiff initially institutes proceedings with a state or local agency with authority to grant or seek relief from such discrimination. Because

---

2. Davitt has consented to the dismissal of her negligent supervision and negligent retention claims (Counts II, and III), and all title VII retaliation claims with the exception of Davitt's retaliation claim based on Wood's reorganization of its Easton Hospital account in 2000.

the PHRC is such an agency, the 300-day limitation period applies. Since Davitt filed her PHRC complaints on September 10, 1999, 300 days prior to that filing would equate to November 14, 1998. Therefore, argue defendants, a title VII claim cannot be based on acts or statements that occurred prior to November 14, 1998. They cite to numerous federal cases to support their position including *Cronin v. Martindale Andres & Co.,* 159 F. Supp.2d 1 (E.D. Pa. 2001); *Kunwar v. Simco,* 135 F. Supp.2d 649 (E.D. Pa. 2001); and *LaRose v. Philadelphia Newspapers Inc.,* 21 F. Supp.2d 492 (E.D. Pa. 1998), *aff'd,* 205 F.3d 1329 (3d Cir. 1999). Davitt agrees that the 300-day limitation period applies but contends that there is an applicable theory here that allows an extension of that period of limitation. The "continuing violation theory" allows a plaintiff to pursue a title VII action for discriminatory conduct that occurred prior to the filing period if she can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant. *Rush v. Scott Specialty Gases Inc.,* 113 F.3d 476 (3d Cir. 1997).

The continuing violation theory is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated. *Jones v. WDAS FM/AM Radio Stations,* 74 F. Supp.2d 455 (E.D. Pa. 1999). To establish that a claim that is otherwise time-barred falls within the continuing violation doctrine, a plaintiff must establish the following two elements: (1) that at least one discriminatory act occurred within the 300-day time period; and (2) that the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination. In evaluating whether the second

prong of this test is met, the court should consider the subject matter, frequency, and permanence of the otherwise untimely discrimination. *Kunwar, supra,* 136 F. Supp.2d at 655 and *LaRose, supra,* 21 F. Supp.2d at 498.

Our first review, then, is to determine whether there is a material issue of fact concerning the existence of these two elements.[3] Defendants argue that since Bausch transferred out of Easton Hospital in August of 1998, this first prong cannot be met. We disagree. The Third Circuit in *West v. Philadelphia Elec. Co.,* 45 F.3d 744 (3d Cir. 1995), dealt with this same issue and reversed the trial court's requirement that the plaintiff stay within the 300-day period unless he could show a continuing violation by the same individual. Therefore, we must look further to determine if there was at least one discriminating act after November 14, 1998.

The record does reveal instances which a jury could conclude that a hostile work environment continued to exist after November 14, 1998.[4] Therefore, the record also may be sufficient to prove the second prong of the continuing violation doctrine, that the harassment was more than isolated or sporadic acts of intentional discrimination.

However, the record also reflects that Davitt knew or should have known well before 300-days prior to the filing of their charge with the EEOC and PHRC that her rights had been violated. As a result, the continuing vio-

---

3. Although defendants argue that Davitt has failed to plead a continuing violation theory, we disagree and will reach the substantive merits of this issue.

4. Those instances are summarized on p. 45 of plaintiffs' brief in opposition to motion for summary judgment.

lation theory is inapplicable. *Jones, supra,* 74 F. Supp.2d at 463; *Cronin, supra,* 159 F. Supp.2d at 5. Davitt has alleged, and she has supported by answers to sexual harassment questionnaires, incidents of sexual harassment to which she believed she was subjected at Easton Hospital. (See defendants' exhibits 58-61, appendix to brief in support of motion for summary judgment.) Certainly, these allegations, going back years before 1998, were sufficient to put Davitt on notice that she believed that her rights were violated. Hence, the continuing violation theory is inapplicable and we will not permit consideration of events which took place prior to November 14, 1998.[5]

Defendants next argue that to the extent that Davitt's hostile work environment sexual harassment claims are based on Bausch's actions, the conduct alleged is not sufficient to establish the existence of a sexually hostile work environment. Since we have concluded that no events which occurred before November 14, 1998, will be considered, we need not address this issue since Bausch was transferred from the Easton Hospital account in August of 1998. Therefore, no action of Bausch's may be considered and he is entitled to summary judgment on this count.

Davitt has also set forth a claim for hostile work environment sexual harassment based on the conduct of her co-workers, namely Conklin, Lichtenwalner, McKelvey,

---

5. It should be noted that Davitt attempted to distinguish *Cronin* by stating that it is not known whether the complaint of discrimination made by plaintiff to the employer was based upon a theory of hostile environment. That interpretation of the case is, at best, strained, since that was the claim made in the lawsuit.

and Frable. Wood contends that their conduct did not amount to the creation of an actionable hostile work environment.[6]

A female plaintiff alleging that sexual harassment created an abusive or hostile working environment must show by the totality of the circumstances that a hostile or abusive working environment existed which is severe enough to affect her psychological stability. In order to prove a hostile work environment, plaintiff must show: (1) that she suffered intentional discrimination because of her sex; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected the plaintiff; (4) that the discrimination would detrimentally affect a reasonable person in the same situation; and (5) the existence of respondent superior liability. *Kunin v. Sears Roebuck and Co.,* 175 F.3d 289, 293 (3d Cir. 1999). Moreover, if the person(s) accused of creating the hostile environment are co-workers of a plaintiff, and not a supervisor, liability exists only where the defendant employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.*

Some of the claimed acts/statements by these employees related to employees other than Davitt. Wood claims that such acts/statements cannot form the basis of a hostile environment claim and that, therefore, Davitt's proof is lacking. We conclude, following the analysis in such cases as *Creamer v. Laidlaw Transit Inc.,* 86 F.3d 167 (C.A. 10, 1996); *Dellert v. Total Vision Inc.,* 875 F. Supp. 506 (N.D. Ill. 1995); and *Stair v. Lehigh Valley Carpen-*

---

6. Again, for the reasons set forth above, we will limit consideration of these individuals' actions to after November 14, 1998.

*ters Local Union No. 600 of the United Brotherhood of Carpenters and Joiners of America,* 813 F. Supp. 1116 (E.D. Pa. 1993), statements or actions not directed to Davitt that did not pertain to her, and that did not occur in her presence cannot be considered in determining whether Davitt was subject to a hostile work environment.

Secondly, Wood claims that statements regarding Davitt's sexual orientation may not form a basis for discrimination or harassment claims. Davitt claims that a few of the Wood employees made comments to other employees that Davitt is a lesbian. Wood cites to the case of *Bibby v. Philadelphia Coca-Cola Bottling Co.,* 2001 U.S. App. Lexis 17075 (3d Cir. August 1, 2001) for support of its position. Davitt contends, and we agree, that *Bibby* is distinguishable from this case.

*Bibby* dealt with a same sex sexual harassment situation wherein plaintiff alleged that he was harassed because of his sexual orientation. Davitt does not claim that she was discriminated against or harassed because of her sexual orientation. In fact, she claims that the allegations of being a lesbian were untrue and that this untruth was just an example of her being harassed because she is a woman. Therefore, we agree with Davitt that *Bibby* does not control this case.

However, even though we agree with Davitt that the creation of rumors of the sexual activity alleged here is offensive, noxious, and inappropriate, we do not believe that it is actionable under title VII. As stated by the United States Supreme Court in *Oncale v. Sundowner Offshore Services Inc.,* 523 U.S. 75 (1998), the plaintiff must prove that the conduct at issue was not merely tinged with of-

fensive sexual connotations but actually constituted "discrimination . . . because of . . . sex." *Id.* at 81. The alleged rumors do not constitute conduct that was sufficiently severe or pervasive to support a hostile work environment sexual harassment claim.

However, we agree with Davitt that a hostile work environment determination must be made upon "the totality of the circumstances." Therefore, after eliminating the incidents that, as a matter of law, have no bearing on the hostile work environment determination, we will look at the remaining incidents collectively. After considering (and ruling upon) all of the foregoing, we are left with the following allegations of conduct on the part of co-employees, not in a supervisory position over Davitt, which Davitt claims constitute a hostile work environment: (1) Conlin massaged Davitt's shoulders on a few occasions;[7] (2) Conlin told Davitt that he had a latex allergy and therefore was unable to wear latex condoms; (3) Lichtenwalner asked Davitt out on dates on a few occasions; and (4) McKelvey, Frable, and Lichtenwalner made false statements about Davitt's sexual orientation. We find these incidents fail to prima facie establish a hostile work environment. In order to constitute actionable sexual harassment pursuant to title VII, the alleged conduct must be so "severe or pervasive to alter the conditions of the victim's employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998). The United States Supreme Court wanted to insure that the standards for establishing "hostility" with regard to these claims are "sufficiently demanding to ensure that title VII does not

---

7. No dates have been established on the record but we will assume, for these purposes, that they occurred after November 14, 1998.

become a general civility code." *Id.* at 788. While we do not condone the alleged actions or statements of Davitt's co-employees, we find the remaining actions to clearly be less severe or pervasive as those seen in numerous cases that have been dismissed by summary judgment. See *e.g., Saidu-Kamara v. Parkway Corp.,* 155 F. Supp.2d 436 (E.D. Pa. 2001); *Bowman v. Shawnee State Univ.,* 220 F.3d 456 (6th Cir. 2000); *Adusumilli v. City of Chicago,* 164 F.3d 353 (7th Cir. 1998); *Weiss v. Coca-Cola Bottling Co.,* 990 F.3d 333 (7th Cir. 1993); *Coopers-Nicholas v. City of Chester,* 1997 U.S. Dist. Lexis 20810 (E.D. Pa. 1997). We therefore grant Wood's motion for summary judgment on the sexual harassment/hostile environment claim.

Davitt also made allegations in her complaint that there were retaliatory acts taken against her which impose liability against the defendants under title VII. Davitt has withdrawn all such claims except the one relating to the reorganization of Wood's Easton Hospital account in 2000. However, we find that Davitt has not raised an issue of material fact sufficient to withstand defendants' motion for summary judgment on this issue. A chronology of the facts is required for this analysis.

As mentioned previously, Davitt filed her PHRC complaint in September 1999. In March of 2000, Wood began planning the reorganization of the Easton Hospital account. In May of 2000, Davitt filed her complaint in state court, alleging slander and false light invasion of privacy. On July 13, 2000, Davitt was informed that her position would be eliminated in conjunction with the reorganization but was told by her immediate supervisor that a new position was available for her. However, Davitt

indicated she did not want to work the hours of the new position and, on August 4, 2000, submitted her resignation. It must be noted that the reorganization affected numerous employees and positions at the Easton Hospital.

In order to establish a prima facie claim of retaliation under title VII, a plaintiff must establish: (1) that she engaged in protected activity; (2) that the employer took an adverse employment action against her after or contemporaneously with the protected activity; and (3) a causal link between the adverse employment action and the protected activity. *Williams v. Pennsylvania State Police—Bureau of Liquor Control Enforcement,* 108 F. Supp.2d. 460, 467 (E.D. Pa. 2000).

The United States Court of Appeals for the Third Circuit has held that:

"Retaliatory conduct other than discharge or refusal to rehire is thus proscribed by title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affects his or her status as an employee.' It follows that 'not everything that makes an employee unhappy' qualifies as retaliation, for 'otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"*Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir. 1997) (quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996)).

Here, Davitt admitted in her deposition that she was offered a new position and refused it. There is no evidence presented that there was any significant altering

of compensation or other terms of employment except for a change in job duties and hours. Even if we concluded that the issue of whether the changed employment conditions should be submitted to a jury, Davitt fails to raise a genuine issue of material fact with regard to the third prong of this claim. She must also establish a causal link between the alleged protected activity (the filing of the PHRC complaint) and the adverse employment action. The six-month gap between the filing of the PHRC complaint and the initial planning of the reorganization may be considered by the court in viewing the issue of causal connection. The United States Court of Appeals for the Fourth Circuit has held that "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). As importantly, at the time of planning and implementation of the 2000 reorganization, the only pending claims against Wood were the common-law tort claims. The title VII claims were not added until after the reorganization was completed.

We now turn to the only remaining claims, the common-law torts of slander and false light invasion of privacy. Count VII of the complaint alleges a cause of action for slander. Davitt alleges that statements made by Bausch and "supervisory and managerial employees" of Wood regarding her sexual orientation (lesbianism) and conduct "imputed unchaste conduct" to her. Defendants argue that (1) this cause of action is barred by the one-year statute of limitation; (2) the statements made could not be reasonably capable of conveying a defamatory

meaning; and (3) Davitt has failed to identify any special harm as the result of the publication of the alleged defamatory statements. Although Davitt's slander cause of action probably fails on each of these arguments, we hold that it fails most egregiously on the basis that Davitt has failed to establish any special damages as a result of the alleged defamatory statements.

In order to sustain an actionable claim of slander, a plaintiff must demonstrate special harm resulting from the publication of the defamatory statements. 42 Pa. C.S. §8343(a)(6). "Special harm" means harm of an economic or pecuniary nature. Mere loss of reputation is not sufficient to prove special harm. *Agriss v. Roadway Express Inc.,* 334 Pa. Super. 295, 483 A.2d 456 (1984); *Bethel v. McAllister Bros. Inc.,* 1993 U.S. Dist. Lexis 4243, * 25-26 (E.D. Pa. March 30, 1993). A plaintiff is relieved of the requirement to prove "special harm" only where the alleged defamatory statements constitute slander per se. Slander per se requires words imputing either: (1) criminal offense; (2) loathsome disease; (3) business misconduct; or (4) serious sexual misconduct. *Clemente v. Espinosa,* 749 F. Supp. 672 (E.D. Pa. 1990).

Since she has failed to allege or prove any special harm, Davitt argues that the allegations of lesbianism inputed unchaste conduct to her, rising to the level of "serious sexual misconduct." We disagree. To say that the allegations allegedly made by Bausch and Wood's other employees, all relating to homosexual sexual practices constitute "serious sexual misconduct" would be contrary to today's mores and community sentiment. As the briefs of the parties point out, nearly one-half of the American public believe that homosexuality is an ac-

ceptable alternative lifestyle. While the alleged actions were framed in a vulgar manner, it does not raise the underlying content of the statements to "serious sexual misconduct." The United States District Court for the Eastern District of Pennsylvania recognized this fact in deciding the case of *Rhine v. Dick Clark Prod.,* 2000 U.S. Dist. Lexis 58 (E.D. Pa. Jan. 1, 2000). That court held that publication of plaintiff's homosexual orientation did not fall within any of the four categories of slander per se. Here, the publication of such alleged orientation, and attendant sexual practices, suffers the same fate.

Davitt also argues that the false statements made imputed "business misconduct" to her. The statement forming the basis of this argument was that Davitt and another female employee were "too busy engaging" in sexual activity "to care what was going on at work." It is the court's function to determine whether a statement constitutes slander per se. *Fox v. Kahn,* 421 Pa. 563, 221 A.2d 181 (1966). Such a comment clearly cannot be deemed to have alleged business misconduct.

Davitt's last claim to be considered is false light invasion of privacy. Both defendants argue that this cause of action must fail because the false information was not "given publicity." Wood further argues that it may not be held vicariously liable for any intentional torts of its employees unless the acts were committed during the course of and within the scope of their employment. Because we believe that genuine issues of material fact exist concerning both of these issues, we deny defendants' motion for summary judgment on this claim and will permit it to be tried before a jury.

## ORDER

And now, April 30, 2002, in consideration of the defendants' motion for summary judgment, after argument thereon, and for the reasons set forth in the accompanying opinion, said motion is granted in part and denied in part. Judgment is entered in favor of the defendants and against the plaintiff on Counts I through III and Count VII. Defendants' motion for summary judgment as to Count VIII is denied and jury trial on this claim is scheduled for August 26, 2002.[8]

___

8. Clerk of Courts, Civil Division, is directed to serve a copy of this order and opinion on plaintiff since her counsel have withdrawn their appearance.